O

# United States District Court
# Central District of California

| | |
|---|---|
| STAGE 32, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH TUCCIO, et al.,<br><br>　　　　　Defendants. | Case No. 2:18-cv-09800-ODW (JEMx)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS [19]** |

## I.　　INTRODUCTION

Plaintiff Stage 32, LLC, ("Stage 32") brings several claims against Joseph Tuccio, Dorian Connelley, Erica Bardin, and Roadmap Writers involving misappropriation of proprietary information. Stage 32 claims Defendants hacked into Stage 32's e-mail system, server, and website to assist Roadmap Writers, a competing company. (*See* First Am. Compl. ("FAC"), ECF No. 8.)

Defendants Joseph Tuccio ("Tuccio"), Dorian Connelley ("Connelley"), and Roadmap Writers ("Roadmap")[1] (collectively, "Defendants") move to dismiss on the following grounds: (1) Plaintiff's federal claims are barred by the statute of limitations and the Court should decline to exercise supplemental jurisdiction over the state law

---
[1] Defendant Erica Bardin has not moved to dismiss. (*See* Mot.)

claims; and alternatively (2) Plaintiff fails to state a claim. (*See generally* Mot. to Dismiss First Am. Compl. ("Mot."), ECF No. 19.)[2]

For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss and declines to exercise supplemental jurisdiction.

## II. BACKGROUND

Stage 32 alleges that Roadmap engaged in unfair competition by stealing trade secrets and propriety information. (*See* FAC.) Roadmap is owned and operated by Tuccio and Connelley. (FAC ¶ 17.)

Stage 32 is an Internet-based social media networking and e-learning company that allows writers, composers, producers, and directors (collectively, "Members") working in the entertainment industry to network with industry executives. (FAC ¶ 10.) Stage 32 provides an online platform and in-person space where Members can create profiles, attend webinars, and access information about creating and protecting entertainment content. (FAC ¶ 10.) On or about February 2011, Stage 32 began creating source code for Stage 32's website. (FAC ¶ 12.) Stage 32 owns intellectual property rights "developed by and through" the services provided on its platform. (FAC ¶ 11.) It also owns rights to lists of Members on its platform and their information and all rights, title and interest in the website. (FAC ¶¶ 11, 12.)

In or about October 2013, Stage 32 and Tuccio began to work together to foster relationships between individual writers and executives that worked in Stage 32's space. (FAC ¶ 13.) Tuccio oversaw the consultations, provided customer support of Stage 32's services, and cultivated close relationship with writers. (FAC ¶ 13.) Writers normally sought Tuccio's assistance with their individual cases. (FAC ¶ 13.) In or about October 2014, at the request of Tuccio, Stage 32 hired Bardin to support Tuccio in his role. (FAC ¶ 14.) Neither Tuccio nor Bardin possessed an ownership interest in the results or proceeds of their work. (FAC ¶¶ 13, 14.)

---

[2] Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Stage 32 alleges that as early as 2016, Tuccio and Bardin engaged in activity designed to sabotage Stage 32 and facilitate unfair competition against Stage 32. (FAC ¶ 15.) Without authorization from Stage 32, Tuccio gave writers free executive consultations, valued at tens of thousands of dollars, and significantly overpaid executives using Stage 32 funds. (FAC ¶ 16.) Stage 32 alleges that Tuccio sustained this conduct for so long that he developed personal goodwill with executives and writers, which he later leveraged to establish a competing company, Roadmap. (FAC ¶ 16.)

While employed at Stage 32, Tuccio set up private calls to discuss Members' futures, and provided friends and family members free script consultation. (FAC ¶¶ 17, 18.) Meanwhile, Bardin accessed Members' contact information from Stage 32's dropbox and then began communicating with individuals that Tuccio had a relationship with. (FAC ¶ 17.) Stage 32 alleges that Tuccio and Bardin rendered identical services to retain Stage 32's clients for Roadmap. (FAC ¶ 17.)

Ultimately, about three weeks before he left the company, Tuccio accessed, copied, and deleted the entire list of Members' emails off of Stage 32's electronic file system. (FAC ¶19.) Tuccio also solicited and retained one of Stage 32's current employees. (FAC ¶ 20.) Bardin then left the company. (FAC ¶ 21.)

On March 22, 2016, Tuccio left Stage 32 and the very next day he launched a fully-functioning website that provided services identical to those provided by Stage 32. (FAC ¶ 21.) On or about March 29, 2016, Roadmap sent unsolicited emails to writers encouraging them to use its services. (FAC ¶ 22.)

Stage 32 thereafter discovered that from February 18, 2016 to January 12, 2017, Tuccio and Bardin engaged in numerous other acts of "unlawful cyber piracy intended to sabotage" Stage 32. (FAC ¶ 23.) Such acts include: (1) at least twice accessing and intentionally crashing Stage 32's servers; (2) on three separate occasions destroying data on the server; (3) taking possession of Stage 32's domain name when it came up for renewal and redirecting customers from Stage 32's website; (4) at least twice

gaining unauthorized "super administrative" access to Stage 32's email system to access private and confidential communications; (5) causing Stage 32 to incur excessive data processing fees by uploading hours of blank digital video to Stage 32's servers; (6) accessing and altering Stage 32's payment tables and transaction history; and (7) hacking the servers and other unlawful activities. (FAC ¶ 23.)

On March 22, 2019, Stage 32 filed its First Amended Complaint and alleges nine claims for relief: (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*; (3) theft of Trade Secrets; (4) Intentional Interference With Business Contracts; (5) Unfair Business Acts and violation of California Business and Professions Code §§ 17200, *et seq.*; (6) Unjust Enrichment; (7) Conversion; (8) Fraud; and (9) Breach of Contract. (*See generally* FAC.) On May 2, 2019, Defendants filed a motion to dismiss ("Motion"). (*See* Mot.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as

true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When a district court grants a motion to dismiss, it should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

### A. Statute of Limitations

Defendants moves to dismiss Plaintiff's federal claims alleging that they are barred by the statute of limitations. Claims that fall under the Computer Fraud and Abuse Act ("CFAA") are subject to a two-year statute of limitations. 18 U.S.C. § 1030(g). Similarly, claims under the Stored Communications Act ("SCA") are subject to a two-year statute of limitations. 18 U.S.C. § 2707(f). Stage 32 filed its FAC on March 22, 2019. (*See* FAC.) Thus, Stage 32 must allege violations between March 22, 2017 and March 22, 2019.

Stage 32 does not dispute the two-year statute of limitations but alleges that it sufficiently plead violations of the statutes by indicating that Tuccio "engaged in other unlawful activities." (Opp'n to FAC ("Opp'n") 4, ECF No. 22.) However, Stage 32 fails to allege any specific instance after March 15, 2017 and the Court does not find that Stage 32's allegation that Tuccio "engaged in other unlawful activities" provides adequate notice. *Sprewell*, 266 F.3d at 988 (finding that conclusory allegations are not given the deference of truth.)

Alternatively, Stage 32 asserts that the Court should grant leave to amend its complaint as it has discovered other instances of unlawful cyber activity after March

22, 2017.[3] (Opp'n 4–5.) Accordingly, it appears that the complaint could be saved by an amendment, and therefore, the Court grants leave to amend. *Manzarek*, 519 F.3d at 1031.

Accordingly, the Court **GRANTS** Defendants' Motion as to the CFAA and SCA claims *with leave to amend*.

### B. Decline Supplemental Jurisdiction

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (citation omitted) ("It has consistently been

---

[3] Stage 32 also alleges that leave to amend should be granted because of a delay in discovery. As the Court has granted leave to amend on an alternative basis, it does not reach this argument.

recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3). *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

As the Court has dismissed all federal law claims against Defendants and no other basis for original jurisdiction exists, the Court **DECLINES** to exercise supplemental jurisdiction.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion to dismiss the first and second claim with leave to amend within fourteen days of this Order and declines to exercise supplemental jurisdiction.

**IT IS SO ORDERED.**

October 28, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**